Oh, yay. Oh, yay. Oh, yay. The Honorable Appellate Court Fifth District State of Illinois is now in session. The Honorable Justice Bowie presiding along with Justice Welch and Justice Moore. The first case this morning is 5-220-487 AOJ Operations, Inc. et al. v. Offutt. Arguing for the appellant AOJ Operations, Inc. is Philip Pence. Arguing for the appellee, Paul Offutt, is John Watson. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the court is permitted to record these proceedings today. Good morning, counsel. How is everybody? Good morning. Doing well. How are you? Morning. Good. I apologize. I'm not in a row, but I'm in downtown Chicago helping out with the new judge orientation. So the perfect example how Zoom can help us out. So I apologize that, but I assure you that not wearing a robe hopefully will not affect how I do my job today. So with all that, Mr. Pence, are you ready to proceed? I am. Thank you, Your Honor. Go right ahead. May it please the court, counsel. I represent the plaintiff appellant's AOJ Operations and all the related entities who are LLCs and corporations who operate and lease assisted living facilities throughout Illinois. And we're here today on the appeal of the motion to compel arbitration that was granted in favor of the defendant, Paul Offutt. And there are three key questions that need to be reviewed de novo by the court today. And that's who, what and where. Who is bound by the agreements? What did they agree to arbitrate? And where should this be heard? Is moving to transfer venue inconsistent with the arbitration? And the answer to those three questions is for who the LLCs and corporations are not bound by the arbitration agreements, for what these common law claims are outside the scope of even these generic arbitration clauses, and where defendant Offutt's motion to transfer venue is inconsistent with his actions to compel arbitration. So starting more in depth with the who, the three LLC entities that are involved in this claim are all established through operating agreements under Illinois law. But a review of these operating agreements shows that in reality, it's actually the members of the LLCs who signed and made capital contributions and exhibit A to those agreements, who are truly the ones operating this business, truly the ones who reached agreement here, and the ones that have any kind of consideration in this, the LLCs themselves put forth no capital consideration. And the fact that the word LLC somewhere appears on the page with a signature over it does not bind these people because the question is, what does their inclusion on the bind them to? So reviewing the three LLCs specifically of the six plaintiffs, it's first important to look at the Illinois LLC Act, which the trial court relied on in granting the motion to compel arbitration. In page 20 of the record, the trial court found that under the Illinois LLC Act, the three LLC plaintiffs were bound by the terms of their operating agreements. And that means by the operating agreements, including arbitration clauses, the LLCs were bound to everything in it. And so in this case, if that were the case, because the LLCs have operating agreements, they are bound by everything in it, and they wouldn't be bound arbitrate, but that is not the case here. Because that law was enacted and amended in 2017, after AFO and GFG LLC signed their operating agreements. So that law has no effect on those two LLC plaintiffs. AOJ did sign their LLC operating agreement in 2017. But even that signature and inclusion of their name on the document with a signature still must establish the core tenets of a enforceable contract offer acceptance and consideration. Now here, let's also talk about the shareholder agreements that bound the three corporations. Likewise, all have exhibit A's attached to them. And those exhibit A's show that it is in fact the shareholders who made capital contributions and the corporations themselves contributed nothing and did nothing under the shareholder agreements. So inclusion of the words by the company on the front page of these shareholder agreements, it's only a form on the document and without showing actual consideration, just like the LLCs, these corporate entities cannot be bound by the terms of their agreement. So, you know that a key takeaway from that is, under Illinois law, LLCs and incorporations are not required to have shareholder agreements, and they're not required to have operating agreements. So the fact that they do have them here doesn't necessarily mean that any claim related to these would necessarily, sorry, let me strike that and we'll move on to the next point, that just because that they have operating agreements doesn't mean the LLCs themselves are necessarily bound by the terms of them. And same with the shareholder agreements, because those documents are only meant to guide the parties who actually signed the agreements, who actually put forth capital contributions. They have no binding effect on the LLCs themselves, absent consideration. And defendant may argue that a mutual promise to arbitrate is itself sufficient consideration. But the question then becomes a mutual promise to arbitrate what? Because even if the court does find that some of the entities had a mutual agreement to arbitrate, that does not mean they had a mutual agreement to arbitrate everything. Arbitration is a matter of contract. So that gets to the second question. What did the parties agree to arbitrate? These are common law claims that are outside the scope of the generic arbitration clauses. Defendant has not cited any authority to show that these claims are covered by entirely unrelated from the agreements. Reviewing the operating agreements and the shareholder agreements will show that nothing in any of the six agreements deals with tort claims, deals with breach of fiduciary duty, deals with tortious interference. And these are not claims in the trial court that arise under breach of contract. They are not claims that arise as disputes between the individual shareholders. These are tort claims that are entirely outside of the four agreements. And so looking at Illinois case law on these points, there can be no claim in these cases that in this case that the claims arise out of the agreements because on the face of the agreements, they do not arise out of them. The question then becomes in the broadest interpretation of this under Illinois law, do they relate to the agreements? And even noting that Illinois law is quite expansive in what relates to an And here there does not. And the guarantee life trust case makes this even clearer because in that case, the court found that the there's no dispute that the terms within the four corners of the contract would be covered by the arbitration clause. But that is not the case here. As guarantee life trust found actions, for instance, taken in the individual capacity of the president of that company were not covered by arbitration. And that's exactly the case we have here. This is not a case of one short shareholder suing another shareholder, because there was some dispute between how shares would be transferred or anything to do with the shareholder agreement. This is the six entities who are suing Paul Offit in his individual capacity, because of the actions he took outside of these six agreements. And under those facts, there is absolutely no way that this can be even found to be related to these contracts. And with that, Illinois law is clear that as a matter of contract, the parties to the agreements can agree to arbitrate, but we have to look at what they agreed to arbitrate, and they did not agree to arbitrate the claims in this case. And then finally, the question of where we pose the court that Offit's motion to transfer venue is inconsistent with his act of compelling arbitration. And Offit will likely argue that there's case law supporting that a motion to transfer venue is a procedural move. And such a procedural step does not necessarily mean that a defendant or a party cannot then later move for arbitration. But what we ask the court is to look at the entirety of the and find that Mr. Offit's actions are inconsistent with him wanting to eventually get to arbitration. He was forum-shopping and trying to get to his home venue of Vermillion County, and only after he filed both the motion to compel and the motion to transfer venue, he first noticed the motion to transfer venue, which was denied. And when he learned that he would have to stay in Champaign County, only then did he notice the motion to compel arbitration. We believe those actions are inconsistent with his desire to compel arbitration, and for that reason, for all of those reasons, the trial court's order should be reversed and remanded, and this case should not be arbitrated. Well, counsel, to the last point, I mean, would you not agree that venue, jurisdiction, those issues have to be brought before the trial court by motion, filed and heard and ruled upon before you even get to filing responsive pleadings and whatnot. I mean, those have to be done early in the proceedings or they're waived, which I believe is what Mr. Watson's in his brief. I mean, would you not agree with that? I would agree with that, Your Honor, and I think that the response would be that they could have noticed both motions for the same hearing and address them at the same time, but what they wanted to do was see if they could first get the venue they wanted, and when they did not get that, then they moved on to arbitration. Okay. Justice Welch or Justice Moore, do you have any questions for Mr. Pence? I take it, Mr. Pence, that that concluded your argument at this time? That's right, Your Honor. No questions. Well, on that point, how do you respond to the Appellee's citing of the Bishop case, Your Honor? The Bishop case, the Appellee says that the Bishop case stands for the proposition that filing and arguing a motion to transfer venue does not constitute a waiver of arbitration. I agree that there is case law on that, Your Honor, and the Bishop case would say that it does not by itself necessarily waive it, but I would ask the Court again to look at the inconsistent actions. There is, of course, at least one case saying that a party taking these actions may not necessarily have waived the right to seek arbitration, but I would ask the Court to look at the entire timing of what happened here and find these actions inconsistent. Is there any case law that you can cite to support your argument? There's case law supporting that the Court should look at any inconsistencies in actions, but as far as finding that a motion to compel arbitration after attempting to transfer venue would be inappropriate, there's no such case law I'm aware of. Thank you. Justice Welch, any follow-up or any questions? Okay. Well, obviously, Mr. Pinch, you'll have your opportunity for your rebuttal. Mr. Watson, go right ahead. Thank you, Your Honor. May it please the Court and counsel, I think the first thing that I wanted to note here is that it's important to note that this is a case where purportedly a majority percentage of stockholders controlling the six companies has brought suit in the name of the company against Paul Offit, a minority stockholder and stakeholder. They're using corporate assets here to litigate these claims against Paul. Based upon the broad generic forms of these arbitration clauses, the circuit court was correct in compelling arbitration. I think I'm going to jump around here and I think I'm going to respond to a few arguments. I'm not necessarily going to repeat everything I have. I think one of the first arguments that Mr. Pence had is that the LLC is merely members and the corporation is merely shareholders. So he talked about this in terms of signatories, but I think it's important with regard to scope because the purpose of a shareholder agreement is to protect the minority shareholders. An operating agreement is to protect the members and those the arbitration clause. Each and every one of those agreements not only included an arbitration clause, but that broad generic form that is intended to get, you know, arbitrate all these claims. So we have a minority shareholder asserting his rights that are set forth in those agreements. So I want to talk about the signatories. I don't really understand where that argument keeps on going. They keep on bringing up the signatories, but we have shown through the documents that five out of the six not only have Paul has signed all six of those documents as to six corporations. There's only one where there wasn't a signature line for the corporate entity, and that was AFO Development LLC. But out of five out of the six, you have signatories by both Paul and somebody on behalf of the corporate entity. Guarantee trust does not stand for the proposition that you couldn't enforce the arbitration agreement against the corporation. It stood for the proposition that when Mr. Biggs out of platinum wasn't a signatory that he could not enforce. But we've shown here on all six that he is a signatory. There was discussions about on a 2011 agreement, a 2013 agreement, but I think it's also important to note that each and every agreement has that language about counterparts that it states that, and let's see if I can find that, have this written down. This agreement may be executed in any number of counterparts with the same effect as if all parties had signed the same document. All counterparts shall be construed together and shall constitute one instrument. Each and every agreement has that language that it can be signed in multiple counterparts. So I don't understand what that argument is about signatories. But if we do get to the very last one, which is AFO Development Inc. And so there's really, I think, three points. There is this Section 5F of the LLC Act. And the reason we looked at that, because of course, this question of whether it applies, it's like there's got to be Illinois law out there that says that the operating agreement of an LLC is the agreement of the LLC. And so we found the statute and there's this argument about it doesn't retroactively apply to AFO. But I think the first thing that's important here is if you look at that Caverny case that they've cited and references to 5LCS 70-4. This is in Head Notes 8 and 9 on page 92. Section 4 says no new law shall be construed to repeal a former law. Essentially, that's the premise there is that did Section 5 actually change the law or did it simply codify existing law? Now, I did find one case that is really, it's an unpublished case. It was a 2011 2nd District and I'll cite it for the court. I know that I'll just maybe cite it for persuasive authority. It is Wig Tech versus Light Switch. It's 406 Illap 3rd 1217 and that was the 2nd District 2011. The same argument was made that a corporate LLC had not signed off on the arbitration agreement. And they look to, and this is the first point that's going to come back to the plaintiff's first argument, is that the MJ signed the operating agreement as agent of Light Switch. And so the first argument is that an LLC is just nothing more than its members. And so if the members sign off on it, it's effectively that the LLC has signed off on that document, which is absolutely true here because not only do we have all of the members signing off on it, the intro paragraphs say the members and LLC. It had another argument about a Delaware statute in which members of an LLC sign it and it's bound by the LLC. And then there's also a discussion about third party beneficiary. But I think the point here is that I don't think Section 5F ever changed the law. I think it merely codified what made sense and what was Illinois law all along. So regardless of whether or not there was a last signature on AFO Development LLC's operating agreement, it was signed by Paul. It was signed by all the other members. The LLC is essentially nothing more than its members itself. Operating agreements are signed to protect the minority members, and that's what's being done here. But, you know, regardless, I think we raised the point in the trial court that it's clear that arbitration should be compelled to the first five. The last one could be stayed and should be stayed for judicial economy if this court finds that for some reason Section 5F doesn't apply or that the general Illinois law is that an LLC is bound by its operating agreement. I think another point I wanted to get to is that it's really about this issue of scope. So I just absolutely disagree with their analysis under guaranteed trust. You know, guaranteed trust first stands for the proposition that Briggs, as a personal entity, could not enforce an Of course, that doesn't apply here because Paul had signed all six of the agreements. Guaranteed trust actually never stands for the proposition that if it's not signed by somebody on behalf of the corporation that it doesn't apply. But what it talked about is scope, particularly with regard to the counts that were directed against this Mr. Biggs of Platinum. There's accounts of fiduciary duty. I'm sorry, there was a count there of common law fraud, a common law fraud case, breach of fiduciary duty, common law case, and tortious interference with contract, a common law case. So each one of those cases and two, again, breach of fiduciary duty is exactly what we have here. Common law fraud would be independent of any agreement. So these are common law cases that were held to be within the scope of that broad form arbitration agreement. So it talked about scope, and this is paragraph 26, talked about the three-pronged approach. If it's clear it's within the scope, it must be arbitrated. If it's clear it's not within the scope, then the motion to compel should be denied. And number three, if it's unclear or ambiguous, it should be referred to the arbitrator, and that's in paragraph 26. And then it looked to this case, this is paragraph 27-28, to that broad form and defined that when you have that form that says any controversy or claim arising out of the agreements or relating to the agreements, which is exactly what we have here, that that is intended to arbitrate any and all claims. And that is what we are asking for. Finally, paragraph 34, as to those claims involving Mr. Briggs at Platinum, so it says, paragraph 34, it is clear from the language of the marketing agreement that GTL's claims against Platinum Briggs are subject to mandatory arbitration. It clearly held that these claims, which were common law fraud, breach of fiduciary duty, and tortious interference, two of the exact claims that have been brought against Mr. Offit were within the scope of that broad form. I'm just going to address, I see I've got four and a half minutes, but I do want to address the waiver. So I think the justices hit it right on point, but I think there's an additional point as well, is that if you look at our motion to compel, that exhibit A of that motion to compel was a, let's see if I can find this, I have too many notes here. I have my dates written out in particularity. I think it's here. Here it is. So the motion to transfer was filed. It had to be filed within the date that I had to answer. I certainly absolutely considered the Bishop versus WeCare hair case to determine how do I manage this, because I've essentially got two potential positions, the motion to transfer venue, and I've got the motion to compel arbitration, and which one goes first, and essentially Bishop versus WeCare care gave me the playbook. That's how you have to do it in Illinois. And that's how we did it. But even before I filed the motion to transfer venue, it's exhibit A to the motion to compel was the demand for arbitration. So this argument about acting inconsistently at no time did I ever act inconsistently that I can get the letter. I think council when was the first request to arbitrate made. It was made in January of 2022. I let me pull that up. I thought I had that. I had that written down. I just got too many notes here. So this is part of the motion to motion. I'm sorry, motion to compel arbitration. Exhibit A. And so January 28, 2022, the demand for arbitration was made as a letter, and that is a three page letter attached to exhibit A of the motion to compel arbitration. That was rejected. So once that was rejected, I knew that we had to address this issue of either filing the motion to transfer or the compel bishop versus we hair care gave me that guidance that the motion to transfer should be argued first. And so the other point in the overall timeline of the litigation had a letter requesting arbitration. And then what came next? So the first thing that happened is that we had a notice and request for waiver of service that was sent in December. We signed that, and I think that was December 27th. So our due date for pleading was February 25th. And so we had the waiver, signed it. February 25th was our deadline. January 28th was our demand for arbitration. And then the motion to transfer was filed February 18th. And then I filed the motion to compel February 23. I filed them about the same because I did want to make sure it was out there. But as to why I noticed the motion to transfer first, it's because that if there, whether it was granted or denied, I wanted to make sure the right court was deciding the motion to compel arbitration. So if the case was moved from Champaign to Vermillion, then it wouldn't have been proper for Champaign to decide the motion to compel. So that's why we noticed them at two different times. Whether or not it was granted or denied, I think the motion to transfer had to be decided first. And so once it was denied, then we noticed it up for the, and I think we ended up getting a June date for that hearing. I think maybe it was either June or July. So that is that procedural history. And I think essentially, you know, whether it's the Code of Civil Procedure requiring that that motion to be transferred to be filed as a first filing or it's waived, it has to be filed first. So I think that's not only is it the law, it's sound law. That's the only way that it can be done. So I see my time is up. I apologize for going long. I certainly would open any questions. But my prayer for relief here is simply that you affirm Justice or Judge Baum in the Circuit Court of Champaign County. But I certainly would entertain any questions if you have any. Well, thank you, counsel. Justice Moore, do you have any further questions? I actually do. You, and this will give Mr. Pence a chance to respond in rebuttal. But Mr. Watson, you assert forfeiture on several issues, I believe. Can you briefly summarize what those are and why they're forfeited? Yeah, you have the waiver issue with regard to retroactivity. And I think that's the court can decide if it wants to apply that or not. That certainly was not raised at the trial court level. That section five rendered was... Why is that forfeited? Well, it wasn't raised in the trial court. Oh, okay. Yeah, it wasn't raised in the trial court. So the first time that it was raised and argued was in appellate court briefing. But I think that regardless of forfeiture, I don't think it matters. I think that this issue that an LLC is bound by its operating agreement, whether or not it's a signatory or not, I think is Illinois law and was prior to the codification under section five F. And so I don't really think the retroactivity issue applies. But I do think there was waiver. But I think the court has to decide on waiver. It's within your purview to do that. Any other issues of forfeiture you'd like to address? I don't remember any. I know that there was an issue raised in the reply brief that had to do with... Let me think about this. Oh, I think it had to do something about the first time that I raised certain arguments were in the supplemental to the motion to compel. I know that they raised this question of the signatories. We went out. We contacted corporate counsel. We got a hold of that first supplement that was in that first supplement or the first amendment to the shareholder agreement and JFG operations and the first amendment to the operating agreement and JFG development. And the reason that there was an amendment is because those two corporate entities, which is the Hoopston assisted living care facility, it was created in 2011. Paul came in later in 2013. So they had first amendments. They didn't. And the amendments had Paul as a signatory. And so the first time it was raised was in a response brief. But I think the point there I was going to raise is that when I filed that supplemental, I reached out to Jim Green and wrote him a letter and said, hey, I know we've got a hearing date set in July. If you need additional time, I'll go ahead and give it to you. We can move that hearing date. And Jim said, no, don't worry about it. I'm not worried about it. And now, again, it pops up in a reply brief. But regardless, that issue of the first amendment, it was added by a supplement to the motion to compel arbitration because we located those documents. But the counterparts provision says that, you know, it doesn't matter if it's signed in multiple counterparts in it. And, you know, each all documents are one single document itself. So I think that's all I have there. Thank you, counsel. I briefly went back through the brief, and that's the only forfeiture argument I did see. OK, thank you, Your Honor. That's all the questions I had. Thank you, Your Honor. Thank you. Justice Welch, do you have any questions? No questions. All right. Well, thank you, counsel. Mr. Pence, go right ahead with your rebuttal. You're on mute. Thank you. Thank you, Your Honor. I will start with that forfeiture point. To frame the forfeiture issue for the court, I believe the issue that's argued that would be forfeited, as defendant argues, is interpretation of the Illinois LLC Act, which was not an issue fully briefed at the trial court, but was an issue raised at the trial court. And as Mr. Watson has noted, that issue of whether or not the Illinois LLC Act applied came up in briefing for the first time after plaintiffs had responded to the motion to compel arbitration. And then the application of the Illinois LLC Act was analyzed at the trial court. And so under the Clayton case cited in our reply brief, if the facts were considered by the trial court, the issue was not waived. And under the Madison case in our reply brief, the party should have the opportunity to have the issue heard. And so the issue of the LLC Act was, in fact, raised at the trial court. And the fact that we are now more fully briefing it and having the opportunity for both sides to talk about it at the appellate court doesn't mean there was forfeiture. It may just mean that it's the most substantively the issue has been briefed after the trial court relied on that act here. And then two other points I want to raise quickly. Mr. Watson cited an unpublished case regarding whether or not the amendments to the Illinois LLC Act would be procedural or substantive to the fact of whether or not it would be applied retroactively. So I want to raise to the court another unpublished decision for any persuasive authority it might have, which is Q Restaurant Group Holdings versus Lapidus, which is 2017 Illinois Act 2D 170804. And in paragraph 18 of that decision, the second district specifically considered whether the amendment to Section 5F of the Illinois LLC Act created a new right and accordingly whether it should be applied retroactively. They found that it was a substantive change because it defined a contractual right by making an LLC a party to an operating agreement where it previously had not been. And accordingly, this would not be applied retroactively. Now, that's an unpublished decision, but it's a case right I want to raise for the court. And then finally, the last point, I just want to disagree once again with the interpretation of what the scope of the arbitration clause the parties agreed to is because it sounds as if under Mr. Watson's interpretation, anything involving these signatories, the parties, the LLCs, anyone who's in any way involved with these entities, if the dispute rises between them, they should be arbitrated. And perhaps that's an unfair analysis of what he's arguing. But I do want to point out a hypothetical that if, for instance, two of the shareholders to the agreements got in a car accident and had a personal injury claim against each other, that, of course, would not be covered under the arbitration clause. So there are some bounds to what is arbitrated here. And I would ask the court to look at the operating agreements and look at how these are common law claims, which are entirely distinct from anything having to do with the operating agreements or shareholding agreements. And on that interpretation, find that these common law tort claims are not within the scope of the arbitration agreement. Thank you, counsel. Just to that last point, you know, if a pair of shareholders run a car accident, I mean, I guess if they were going to or from maybe a shareholder meeting. But that may have nothing to do with the operations of this business, correct? I agree. And I would contend that the operation of this business is a step closer, but it's not anything having to do with the rights delineated between how the shareholders interact with each other as far as maintaining their shares or how the LLCs which own and operate and lease out physical structures in the operating agreements, again, has nothing to do with this dispute. Okay. Justice Welch or just no questions. Justice Moore, any questions? Nothing else. Well, counsel, thank you for your arguments today. Obviously, we'll take this matter under advisement and we will get an order out in due court.